ORDER (Denying Attorney Fees)
TODD R. MATHA Associate Judge.
INTRODUCTION
The Court must determine whether the plaintiffs can receive attorney fees and costs against the Ho-Chunk Nation (hereinafter Nation) for prevailing on their cause of action. The Judiciary has developed an ambiguous jurisprudence in relation to this issue. In light of this ambiguity and other below-identified reasons, the Court denies the plaintiffs’ request for relief.
PROCEDURAL HISTORY
On April 18, 2001, the plaintiffs filed the Motion for Attorney Fees and Costs (hereinafter Plaintiffs’ Motion). Consequently, the Court required the parties to submit legal memoranda on the issue due to its status of one of first impression. Hr’g (LPER at 9, Apr. 23, 2001, 10:42:30 CDT). The parties submitted timely memoranda on May 4, 2001. The plaintiffs filed the Memorandum in Support, of Attorney Fees and Costs (hereinafter Plaintiffs’ Memorandum), and the defendants filed the Response to Plaintiffs’ Motion for Attorney's Fees (hereinafter Defendants’ Response ).
At the time of the filings, the plaintiffs occupied a diminished role in the litigation. Following the entry of the November 13, 2000 Order (Granting Plaintiffs’ Motion for Summary Judgment) (hereinafter *161 Summary Judgment Order), the plaintiffs appeared at only four (4) of seven (7) hearings despite receipt of proper notice. See Constitution of the Ho-Chunk Nation (hereinafter Constitution), Art. V, § 4 (authority to redistrict/reapportion delegated to the Legislature). Yet, even after the conclusion of the present case, the Nation’s current redistricting/reapportionment scheme did not become finalized until July 22, 2002. See Robert A. Mudd v. HCN Legislature et al., CV 03-01 (HCN Tr. Ct., Feb. 13, 2003) at 11. The Judiciary entered its last decision concerning the legal impact of the 2002 redistricting/reapportionment nearly a year later. Greg Littlejohn v. HCN Election Bd. et al., SU 03-07 (HCN S.Ct., July 11, 2003).
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Article V Legislature
Sec. 4. Redistricting or Reapportionment. The Legislature shall have the power to redistrict or reapportion including changing, establishing, or discontinuing Districts. The Legislature shall maintain an accurate census for the purposes of redistricting or reapportionment. The Legislature shall redistrict and reapportion at least once every five (5) years beginning in 1995, in pursuit of one-person/one-vote representation. The Legislature shall exercise this power only by submitting a final proposal to the vote of the people by Special Election which shall be binding and which shall not be reversible by the General Council. Any redistnetmg or reapportionment shall be completed at least six (6) months prior to the next election, and notice shall be provided to the voters.
Art. VII Judiciary
Sec. 5. Jurisdiction of the Judiciary.
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including eases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
Sec. 6. Powers of the Tribal Cowrt.
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.
Sec. 7. Poivers of the Supreme Court.
(a) The Supreme Court shall have the power to establish written rules for the Judiciary, including qualifications to practice before the Ho-Chunk courts, provided such rules are consistent with the laws of the Ho-Chunk Nation.
Art. VII-Elections
Sec. 4. Election Board.
The Legislature shall enact a law creating an Election Hoard. The Election Board shall conduct all General and Special Elections. At least sixty (60) days before the election, the Election Board may adopt rules and regulations governing elections. Election Board members shall serve for two (2) years. Election Board members may serve more than one term. *162 The Legislature may remove Election Board members for good cause.
Art. X-Bill of Rights
Sec. 1. Bill of Rights.
(a) The Ho-Chunk Nation, in exercising its powers of self-government, shall not:
(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;
Ait. XII—Sovereign Immunity
Sec. 1. Immunity of Nation from Suit. The Ho-Chunk Nation shall be immune from suit except to the extent that the Legislature expressly waives its sovereign immunity, and officials or employees of the Ho-Chunk Nation acting within the scope of their duties or authority shall be immune from suit.
Sec. 2. Suit Against Officials and Employees. Officials or employees of the Ho-Chunk Nation who act beyond the scope of their duties or authority shall be subject to suit in equity only for declaratory and non-monetary injunctive relief in Tribal Court by persons subject to its jurisdiction for purposes of enforcing rights and duties established by this constitution or other applicable laws.
HO-CHUNK NATION JUDICIARY ACT OF 1995
See. 3. Rules and Procedure.
All matters shall be tried in accordance with the Ho-Chunk Rules of Procedure and the Ho-Chunk Rules of Evidence which shall be written by the Supreme Court, published, and available to the Public.
HO-CHUNK NATION LEGISLATIVE R K SO L UTIO N 03-2f>-9(>A

Limited Waiver of Sovereign Immunity

The Ho-Chunk Nation hereby expressly provides a limited waiver of sovereign immunity to the extent that the Court may award a maximum of $2,000.00 to any one employee. Other remedies shall include an order of the Court to the Personnel Department to reassign the employee. Any monetary awards granted under this Chapter shall be paid out of the department budget from which the employee grieved. Nothing in this Policies and Procedures shall be construed to grant a party any remedies other than those included in this section.
HO-CHUNK NATION PERSONNEL POLICIES AND PROCEDURES MANUAL {updated Feb. 11, 2002)
Ch. 12 Employment Conduct, Discipline, and Administrative Review
Limited Waiver of Sovereign Immunity. [p. 62]
The HoChunk [sic ] Nation hereby expressly provides a limited waiver of sovereign immunity to the extent that the Court may award monetary damages for actual lost wages and benefits established by the employee in an amount not to exceed $10,000, subject to applicable taxation. Any monetary award granted under this Chapter shall be paid out of the departmental budget from which the employee grieved. In no event shall the Trial Court grant any monetary award compensating an employee for actual damages other than with respect to lost wages and benefits. The Tidal Court specifically shall not grant any monetary award against the Nation or its officials, officers, and employees acting within the scope of their authority on the basis of injury to reputation, defamation, or other similar invasion of privacy claim; nor shall the Trial Court grant any punitive or exemplary damages.
The Trial Court may grant equitable relief mandating that the HoChunk [sic ] Nation prospectively follow its own laws, and as necessary to remedy any past violations of tribal law. Other equitable reme *163 dies shall include, but not be limited to; an order of the Court to the Personnel Department to reassign or reinstate the employee, a removal of negative references from the personnel tile, an award of bridged service credit, and a restoration of seniority. Notwithstanding the remedial powers noted in the Resolution, the Court shall not grant any remedies that are inconsistent with the laws of the HoChunk [sic] Nation. Nothing in this Limited Waiver or within the Personnel Policies and Procedures Manual shall be construed to grant a party any legal remedies other than those included in this section. (Resolution 06/09/98A)
HO-CHUNK NATION RULES OF CIVIL PROCEDURE (adopted Feb. 22, 1997)
Rule 4. Filing Fees.
(A) Fee. The filing fee for a Complaint in the Trial Court of the Ho-Chunk Nation Judiciary shall be thirty-five dollars ($35 U.S.). The fee shall be waived for petitions filed by the Ho-Chunk Nation. The fee may be waived at the Court’s discretion, for parties who are unable to pay the fee.
(C) Other costs waived. A person authorized to file their petition without paying a filing fee shall also be entitled to have other costs and expenses deferred until the time of settlement or judgement of the action.
Rule 16. Signature of Parties and Counsel; Special Appearances.
(B) Counsel not admitted to practice before the Ho-Chunk Nation Courts may be permitted to appear on behalf of a client by Special Appearance in an action. In order to be permitted to make a special appearance, counsel must file a motion to allow the special appearance; a proposed Order, and an affidavit containing the oath or affirmation for admission to practice, stating that they are admitted to practice in another state, federal or tribal jurisdiction, and stating they have been in actual practice for two or more years. They must also submit a processing fee for the special appearance of $35.00.
Rule 20. Hearings on Motions.
A hearing on a Motion may be held in the discretion of the Court. A party requesting a hearing must (a) schedule the hearing with the Court and (b) deliver or mail notice of the hearing to other parties at least five (5) calendar days prior to the hearing. If the trial is scheduled to begin within the time allowed for a hearing, all responses shall be made by the time scheduled for commencement of the trial. Motions made within fourteen (14) calendar days of trial may be dismissed and costs and fees assessed against the moving party if the Court finds no good cause exists for failing to file the Motion more than fourteen (14) calendar days in advance of the trial.
Rule 27. The Nation as a Party.
(B) Civil Actions. When the Nation is filing a civil suit, a writ of mandamus, or the Nation is named as a party, the Complaint, in the case of an official or employee being sued, should indicate whether the official or employee is being sued in his or her individual capacity. Service can be made on the Ho-Chunk Nation Department of Justice and will be considered proper unless otherwise indicated by these rules, successive rules of the Ho-Chunk Nation Court, or Ho-Chunk Nation Law. Rule 38. Non-Compliance.
If a party fails to appear or respond under these rules, a party may request or the Court may issue an Order requiring a response and imposing costs, attorney’s fees, and sanctions as justice requires in order to secure compliance.
Rule 44. Presence of Parties and Witnesses.
(A) Subpoenas. Subpoenas may be used to cause a witness to appear and give *164 testimony. If a party wishes to have a subpoena issued by the Court, he/she shall furnish a properly prepared subpoena including information necessary for service of process at least ten (10) calendar days before trial. Service will be completed at least three (3) calendar days prior to hearing or trial. When service has been completed, the Court shall mail proof of service to all parties. When service of the subpoena will not be through the Court, the requesting party shall present the properly prepared subpoena to the Court for signature in time to ensure proper service before the hearing or trial and shall return proof of service to the Court prior to the trial. If a party does not timely request a subpoena, he/she shall not be entitled to a postponement because of the absence of the witness. If the subpoena has been timely issued, the Court may, in its discretion, postpone the hearing or trial. A person who fails to appear after being subpoenaed may be held in contempt of court.
Rule 53. Relief Available.
Except in a Default Judgement, the Court is not limited to the relief requested in the pleading and may give any relief the evidence makes appropriate. The Court may only order such relief to the extent allowed by Ho-Chunk Nation enactments. The Court may order any party to pay costs, including filing fees, costs of service and discovery, jury and witness costs. Findings of fact and conclusions of law shall be made by the Court in support of all final judgements.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE (amended Apr. 13, 2002)
Rule 53. Relief Available.
Except in a Default Judgment, the Court is not limited to the relief requested in the pleading and may give any relief it deems appropriate. The Court may only order such relief to the extent allowed by Ho-Chunk Nation enactments. The Court may order any party to pay costs, including attorney’s fees, filing fees, costs of service and discovery, jury and witness costs. Findings of fact and conclusions of law shall be made by the Court in support of all final judgments.
Rule 58. Amendment to or Relief from Judgment or Order.
(A) Relief from Judgment. A Motion to Amend or for relief from judgment, including a request for a new trial shall be made within ten (10) calendar days of the filing of judgment. The Motion must be based on an error or irregularity which prevented a party from receiving a fair trial or a substantial legal error which affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgment, the Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgment accordingly. The motion may be made with a motion for a new trial. If the Court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the Court denies a motion filed under this rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the filing of such motion, and the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an *165 appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(C) Motion to Modify. After the time period in which to file a Motion to Amend of a Motion for Reconsideration has elapsed, a party may file a Motion to Modify with the Court. The Motion must be based upon new information that has come to the party’s attention that, if true, could have the effect of altering or modifying the judgment. Upon such motion, the Court may modify the judgment accordingly. If the Court modifies the judgment, the time for initiating an appeal commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) calendar days after the filing of such motion, and the Court does not decide the motion or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(D) Erratum Order or Reissuance of Judgment. Clerical errors in a court record, including the Judgment or Order, may be corrected by the Court at any time.
(E) Grounds for Relief. The Court may grant relief from judgments or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not reasonably have been discovered in time to request a new trial; or (2) fraud, misrepresentation or serious misconduct of another party to the action; or (3) good cause if the requesting party was not personally served in accordance with Rule 5(c)(l)(a)(i) or (ii); did not have proper service and did not appear in the action; or (4) the judgment has been satisfied, released, discharged or is without effect due to a judgment earlier in time.
Rule 61. Appeals.
Any final Judgment or Order of the Trial Court may be appealed to the Ho-Chunk Nation Supreme Court. The Appeal must comply with the Ho-Chunk Nation Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of a final Judgment or Trial Court Order must follow the HCN Rules of Appellate Procedure.
HO-CHUNK NATION CONTEMPT ORDINANCE
Sec. 1.01. Statement of Policy.
The Ho-Chunk Nation, mindful that the Judiciary represents a fundamental aspect of .tribal sovereignty, recognizes that the Nation’s Courts retain the inherent authority to exercise the power of contempt. In order to preserve the dignity and decorum of the Judicial Branch, secure the compliance with orders and procedures, and protect the due process rights of those appearing before the Courts, this Ordinance establishes the substantive and procedural requirements of the contempt power.
Sec. 3.01. Subject Matter Jurisdiction.
The authority of the Ho-Chunk Nation’s Courts to pursue contempt remains available in civil matters which otherwise fall within the jurisdiction of the Nation pursuant to the Constitution, laws, statutes, ordinances, and resolutions.
Sec. 5.01. Kinds of Sanctions.
Upon a finding of contempt, the Ho-Chunk Nation Courts are authorized to impose any or all of the following:
(a) Payment of a sum of money sufficient to compensate a party for a loss or injury suffered as a result of the contempt of Court;
*166 (b) Payment of a sum of money to the Court not to exceed $100 for each day the contempt of Court continues;
(e) An order designed to redress past disobedience with a prior order of the Court;
(d) An order designed to ensure compliance with an ongoing order of the Court;
(e) Any order appropriate sanction or order if the Court expressly finds that Section 5.01 (a-d) would be ineffective to address, terminate, or otherwise ensure compliance in a past or continuing contempt of Court.
FINDINGS OF FACT
1. The plaintiff, Chloris A. Lowe, Jr., is a member of the Ho-Chunk Nation, Tribal ID # 489A001593, and resides at 2821 West Sixth Street, Wilmington, DE. The plaintiff, Stewart J. Miller, is a member of the Ho-Chunk Nation, Tribal ID # 439A002566, and resides at 225 Larkin Street, Madison, WI. Compl. for Declaratory & Injunctive Relief (hereinafter Complaint), CV 00-104 (Oct. 25, 2000) at 1-2.
2. The defendants, Elliot Garvin, Gerald Cleveland, Myrna Thompson, Dallas White Wing, and Clarence Pettibone, are duly elected representatives to the Ho-Chunk Nation Legislature, a governmental branch of the Nation, a federally recognized Indian tribe with principal offices located on trust lands at the Ho-Chunk Nation Headquarters, W9814 Airport Road, P.O. Box 667, Black River Falls, WI. The defendant, Ho-Chunk Nation Election Board, is a constitutionally designated agency of the Nation with offices located at 4 East Main Street, Black River Falls, WI. Const., Art. VII, § 4.
3. Plaintiffs’ counsel, Attorney Gary J. Montana, resides at N12933 North Frame Road, Osseo, WI. Compl at 18. The physical address of the Ho-Chunk Nation Trial Court is W9598 Highway 54 East, Black River Falls, WI. The distance between the two (2) locations is approximately thirty-five (35) miles one way, and can be traveled in approximately thirty-nine (39) minutes. http://www.mapquest.com/directions/ main.adp?bCTsettings=1 (last visited Mar. 9,2004).
4. On October 25, 2000, plaintiffs’ counsel paid the filing fee of $35.00 for the initial pleading. See Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.f Rule 4(A).
5. On October 25, 2000, plaintiffs' counsel paid the fee of $35.00 for Ms special appearance. Id., Rule 16(B).
6. On November 1, 2000, a purported agent of plaintiffs’ counsel, Libby R. Fair-child, Tribal ID # 439A002179, paid the fee of $30.00 associated with the Court’s service of subpoenas. Id., Rule 44(C); see also Aff. of Sera, CV 00-104 (Nov. 8, 200)).
7. Prior to the issuance of the Summary Judgment Order, plaintiffs’ counsel attended three (3) judicial proceedings. The November 1, 2000 Pre-Trial Hearing began at 8:00 a.m. and adjourned at 8:30 a.m. CST. Pre-Trial Hr’g Tr., CV 00-104 (Nov. 8, 2000) at 1, 25. The November 6, 2000 Hearing on Defenses began at 9:10 a.m. and adjourned at 11:00 a.m. CST. Hr’g on Defenses Tr., CV 00-104 (Nov. 13, 2000) at 1, 64. The November 9, 2000 Summary Judgment Hearing began at 1:34 p.m. and adjourned at 2:44 p.m. CST. Surnm, J. Hr’g Tr., CV 00-104 (Nov. 20, 2000) at 2, 48. Therefore, plaintiffs’ counsel participated in hearings for a combined total of three (3) hours and thirty (30) minutes.
8. Prior to the issuance of the Summary Judgment Order, plaintiffs’ counsel filed fifty-eight (58) pages of individually *167 prepared written work product. The Oc* tober 25, 2000 Complaint, consisted of eighteen (18) prepared pages and thirteen (13) pages of attachments. The October 25, 2000 Motion to Appear Specially consisted of five (5) prepared pages, including the Certificate of Delivery. The November 3, 2000 Notice of Disclosure consisted of four (4) prepared pages, including the Certificate of Hand Delivery. The November 6, 2000 Defendant’s lsic] Reply to Defendant’s Motion to Dismiss consisted of fourteen (14) prepared pages, including the Certificate of Mail and Via Fax. The November 7, 2000 Plaintiffs [sic] Notice of Witnesses consisted of four (4) prepared pages, including the Certificate of Mail and Via Fax. The November 8, 2000 Cross Motion for Summary Judgment consisted of three (3) prepared pages, including the Certificate of Mail and Via Fax. The November 9, 2000 Plaintiffs) [sic] Memorandum in Support of Cross Motion for Summary Judgment consisted of ten (10) prepared pages, including the Certificate of Mail and Via Fax, and also two (2) pages of attachments.
9. On November 1, 2000, the Court informed the parties that they would need to deliver all future filings to one another and the Court by facsimile transmission due to the condensed election challenge timeframe. Pre-Trial Hr’g Tr. at 21, 11. 16-17.
10. Prior to the issuance of the Summary Judgment Order, plaintiffs’ counsel prepared twenty-two (22) subpoenas, which he presented to the Court.
11. On December 28, 2000, the defendants/appellants filed the Notice of Appeal. The appellants made the following contention regarding the entry of summary judgment.
Placing a “no action” or “no change” scenario on the ballot is not per se unconstitutional under the HCN Constitution. The [Court] also committed reversible error by holding that a “no action” or “no change” scenario is per se unconstitutional. See Order at p. 14 of 15. The Constitutional requirement of Article V, section 4 requiring that the Legislature exercise their power by submitting to a binding vote of the People directly implies the People’s right to reject the proposal and maintain the status quo.
Notice of Appeal, SU 00-17 (Dec. 28, 2000) at 4. The appellants elaborated upon this argument in the Appellants’ Brief.
The Legislature discharged its Constitutional duty by formulating a final redistricting/reapportionment proposal and submitting it to the People. The People exercised their prerogative by rejecting redistricting/ reapportionment and choosing no change. The People’s choice does not negate the fact that the Legislature did what the clear terms of the Constitution require it to do.
Appellants’ Br., SU 00-17 (Jan. 8, 2001) at 9; but see Const., Art. V, § 4 (“The Legislature shall redistrict and reapportion at least once every five (5) years.... ”). Despite the presence of a clear constitutional mandate, the appellants continued to argue that “the People decide whether any redistricting/reapportionment occurs.” Appellants’Br. at 9.
12.On February 17, 2001, the appellants presented their position to the Ho-Chunk Nation Supreme Court (hereinafter HCN Supreme Court) at oral argument, prompting an initial question from Justice Pro Tempore Kimberly Vele. Justice Vele inquired: “what I don’t understand in your argument, Counsel, is how does an option to do nothing further the ‘in pursuit’ language, which is in the Constitution?” Oral Argument Tr., SU 00-17 (Feb. 17, 2001) at 13, 11. 12-14. Not persuaded by the response of appellants’ counsel, Justice Vele *168 continued: “I want, to know, how does the ‘no action’ plan meet the requirement, ‘in pursuit of one-person/one-vote,’ if it’s no action?” Id. at 14-15, 11. 24-1. Appellants’ counsel answered: “my argument is not that it meets the requirement, and not [that] the ‘no action’ is per se constitutional.” Id. at 15, 11. 2-4. Nonetheless, the appellants contended that the Judiciary remained powerless to grant a remedy due to the alleged presence of a non-justiciable political question. Id., 11. 9-18.
13. On March 13, 2001, the HCN Supreme Court entered its final judgment and, while not even choosing to directly discuss the constitutionality of the “No Action or No Change” scenario, flatly rejected the political question defense. Decision, SU 00-17 (HCN S.Ct., Mar. 13, 2001) at 4-5.
14. On April 18, 2001, plaintiffs’ counsel filed the Plaintiffs’ Motion, which consisted of four (4) prepared pages, including the Certificate of Service. The motion noted that “[t]he plaintiff(s) within then* Complaint have clearly set out their request for attorney fees, costs and expenses associated with filing of this lawsuit.” Pis. ’ Mot. at 2 (citing Compl. at 17). Acknowledging November 13, 2000, as a terminal date, the plaintiffs argued that the defendants’ patently unconstitutional actions forced the plaintiffs to litigate. Pis. ’ Mot.
15. On May 4, 2000, plaintiffs’ counsel filed the Plaintiffs’ Memorandum, which consisted of five (5) prepared pages, including the Certificate of Service. The plaintiffs inquired: “[w]hy should the Defendants be able to act in any manner they choose and then have the attorney’s [sic ] that are retained by the whole Nation, represent then [sic ] against the membership and defend their unconstitutional actions free of charge?” Pis.’ Mem. at 3. The plaintiffs concluded by stating that the Court “has the statutory authority to grant attorney fees and costs, as costs may be interpreted to include fees. The Plaintiffs respectfully request attorney fees in the amount of $3,700.00 and costs in the amount of $1022.00....” Id. at 4 (citing HCN R. Civ. P. 53). The plaintiffs provided no itemization in conjunction with this request.
16. Neither party requested a hearing on the issue of attorney fees and costs. See HCN R. Civ. P. 20.
17. The following figures represent a statistical analysis of civil cases filed in the Trial Court during the 2000 calendar year.
Number of Civil Cases: 116 [1]
Number of Civil Cases w/ Possibility of Trial: 75 [2]
Number of Civil Cases w/ Nation as Plaintiff: 28 [3]
Number of Civil Cases w/ Nation as Defendant: 42 [4]
Number of Cases not involving the Nation: 6 [5]
Number of Cases in which the Nation
*169 Prevailed: 53/66[6]
Percentage of Cases in which the Nation Prevailed: 80.3%
18. On April 13, 2002, the Ho-Chunk Nation Supreme Court amended Rule 53 to expressly include “attorney’s fees” as an enumerated “cost” that the Trial Court could award a prevailing party. HCN R. Civ. P. 53. Prior to the amendment, the Court granted attorney fees in two (2) cases pursuant to Rule 53. Steve B. Funmaker v. JoAnn Jones et al., CV 97-72 (HCN Tr. Ct., Mar. 26, 1998); Jeremy Rockman v. JoAnn Jones, CV 96-47 (HCN Tr. Ct., Nov. 8, 1996), tiff’d, SU 96-10 (HCN S.Ct., Mar. 24, 1997).
DECISION
This decision concerns whether a plaintiff may receive attorney fees and costs as a result of suing to enjoin an unreasonable and unconstitutional action of agents of the Nation. The Court shall begin by reviewing prior case law within this jurisdiction. The Court shall then extend its focus outward to discover the current status of federal law on this issue. The examination shall conclude with an assessment of the Court’s equitable powers.
In Simplot, the Court awarded the amount of $200.00 “for reasonable expenses and fees” against the Nation as a consequence of its unjustified failure to respond to interrogatories. Lonnie Simplot et al. v. HCN Dep’t of Health, CV 95-26-27, 96-05 (HCN Tr. Ct., Aug. 14, 1996) at 1. Furthermore, the Court found that the absence of a response “prejudiced [the plaintiffs] in their ability to file proper Motions for Summary Judgment in their case.” Id. (HCN Tr. Ct, June 26, 1996) at 2. The Court premised its award on the fact that the defendant’s inaction forced the plaintiffs to file a motion to compel. Id.
Similarly in Rockman, the plaintiffs action forced the defendant to unnecessarily expend resources. The plaintiff initiated the suit by filing an initial pleading, but subsequently requested a voluntary dismissal at the scheduling conference. Rockman, CV 96-47 (HCN Tr. Ct„ Nov. 8, 1996) at 1. The Court awarded $570.60 for “reasonable” attorney fees and mileage reimbursement since the defendant “incurred unnecessary costs[ ] in defending against an action that the plaintiff ... brought!,] wasting the resources of the Court and its staff and that of the defendant.” Id. at 4. The Court based the mileage award on the distance that the attorney needed to travel to attend the scheduling conference, using the statutory allowance of $.30 per mile to calculate a roundtrip from Madison to Black River Falls. Id. at 2.
The HCN Supreme Court affirmed the Trial Court decision after reviewing the judgment for an abuse of discretion in granting attorney fees and costs pursuant to HCN R. Civ. P. 53. Id., SU 96-10 (HCN S.Ct, Mar. 24, 1997) at 1. The HCN Supreme Court stated:
[t]he trial court properly exercised that discretion in awarding the costs and fees she incurred in connection with the October 30, 1996 hearing. As a result of the Appellant’s failure to notify the Ap-pellee of his intention to dismiss his claim, the Appellee incurred substantial *170 cost to attend a hearing that was previously scheduled by the Mai court. This Court agrees that if the Appellee had received proper notice for considering the Motion to Dismiss without prejudice, the trial court may have canceled the scheduling hearing.
Id. In addition, the HCN Supreme Court awarded the defendant/appellee the identical amount of $570.60 “incurred in connection of [sic ] this appeal.”[7] Id. at 2.
The Funmaker case differs from the above actions in that the plaintiff neither failed to prosecute his claims nor neglected to adhere to procedural requirements. The defendants filed dispositive motions, which the plaintiff, by and through legal counsel, argued against ata scheduled motion hearing. Funmaker, CV 97-72 (HCN Tr. Ct., Nov. 26, 1997) at 2. The Court awarded $3,311.75, twenty-five percent (25%) of the requested amount, since one (1) of the four (4) causes of action proved “frivolous and should never have been brought in the first place.” Id, at 16, n. 6. The Court denied attorney fees in relation to the other causes of action since each possessed “arguable merit.” Id, Furthermore, the Court awarded attorney costs and services in the amount of $249.95, including copying charges that the Court reduced to reflect its standing charge of $.05 per page. Id. (HCN Tr. Ct., Mar. 26, 1998) at 2.
The Court did not address the issue of attorney fees again until two (2) years later. Jolene Smith v. Scott Beard, as Dir. of HCN Dep’t of Educ., et al,, CV96-94 (HCN Tr. Ct., Aug. 10, 2000), aff'd on other grounds, SU 00-14 (HCN S.Ct., Feb. 6, 2001). Ms. Smith’s lay advocate requested fees following a settlement, three (3) subsequent appeals and prevailing, in part, at trial. Id. at 1-5. Like Simplot, the Smith case proceeded to Court after the plaintiff exhausted the Administrative Grievance Process of the Ho-Chunk Nation Personnel Policies & Procedure Manual (hereinafter Personnel Manual). Unlike Simplot, the Court denied attorney fees by reference to the limited waiver of sovereign immunity.[8] Id. at 25-26.
The Court decided the issue as follows: the limited waiver of sovereign immunity at issue in this case (HCN Legislative Res. 3-26-96A) allows the wronged employee to recover a maximum of $2,000 and reinstatement. It is silent as to attorney, or Lay Advocate!,] fees. The Court must give appropriate deference to the Legislature. Had the Legislature intended that a wronged employee be able to recover attorney or Lay Advocate fees, they would have specifi- *171 eally so stated. Furthermore, HCN Legislative Res. 3-26-96A bars any remedies not explicitly listed within the resolution. The Court therefore holds that the plaintiffs claim for Lay Advocate fees is barred by HCN Legislative; Res. 3-26-96A.
Id. (footnote omitted). The Court declined to explain the justification for providing the Simplot plaintiffs attorney fees, which when combined with an award of back pay exceeded the $2,000.00 statutory limitation. See Simplot, CV 96-05 (HCN Tr. Ct., Aug. 29, 1996) at 24.
The Court may have considered the attorney fees award as a sanction for failure to adhere to a discovery request. See HCN R. Civ. P. 38. In fact, the Simplot plaintiffs received no attorney fees for prevailing on their cause of action. The Court, however, never referenced Rule 38, but did note that the single occurrence could “be seen as a clear exception to the normal rule of no attorney’s fees where the Court was attempting to uphold the integrity of the judicial process.” Smith, CV 96-94 (HCN Tr. Ct., Sept. 6, 2000) at 3. Yet, the Court offered no rationale explaining how a monetary sanction could pierce the Nation’s sovereign immunity.
Despite not granting attorney fees, the Court awarded costs in Smith in the form of filing fees. Id. (HCN Tr. Ct., July 10, 2001) at 2. The Court appeared willing to award lay advocate costs, telephone, postal and copying, but denied such requests due to the plaintiff’s failure to submit an itemization supported by corroborating documentation. Id. at 2-3. Again, the Court did not explain how such awards could pierce the Nation’s sovereign immunity.
The Court also chose to deny reimbursement for travel costs, but upon a different rationale. The Court expressed that “[tjravel costs are not costs in the traditional sense.”[9] Id. at 3. Instead, when the plaintiff “obtained employment with the Ho-Chunk Nation, she accepted these travel costs as incidental to her employment with the Nation as she may only sue the Nation through its courts.” [10] Id.
Most recently, the Court followed the guidance of Smith and granted costs, but denied attorney fees. Joan M. Whitewater et al. v. HCN Office of Tribal Enrollment et al, CV 99-62, 3 Am. Tribal Law 359, 2001 WL 36168187 (HCN Tr. Ct., Apr. 3, 2001), rev’d on other grounds, SU 01-06 (HCN S.Ct., Oct. 31, 2001). The Court found “no statutory or other authority to grant attorney’s fees.” [11] Whitewater, CV 99-62 at 31, 3 Am. Tribal Law at 380. The Court requested an itemization of costs, *172 but the appellate reversal negated this issue.
Each of the foregoing judgments shares some common traits apart from seeming logical inconsistencies. The rulings represent discretionary decisions of the Court, yet conditioned upon the fact that “[t]he Court may only order such relief to the extent allowed by Ho-Chunk Nation enactments.” HCN R. Civ. P. 53. One such enactment, the constitution, provides that the Court may “issue all remedies in law and in equity.” Const., Art. VII, § 6(a). However, this broad grant of authority does not evidence a waiver of tribal sovereign immunity, and the existence of sovereign immunity serves to confuse an already complicated inquiry when a party seeks attorney fees against the Nation. See id., § 5(a). Regrettably, the Court has not developed easily defined standards, but an ambiguous case-by-case approach. Furthermore, the Court has not consulted, or at least cited, external law to elucidate “traditional” or contemporary approaches to the issue. The Court shall attempt to do so at this point.
Both parties addressed the issue of attorney fees by first examining the seminal case on the issue. PL ⅛ Mem. at 2; Defs. ’ Resp. at 2. The United States Supreme Court (hereinafter U.S. Supreme Court) provided an historical overview of the law relating to taxation of costs in a case in which it overturned an attorney fees award. Alyeska Pipeline Co. v. Wilderness Soc.’y, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The appellate division granted attorney fees as an exercise of its equitable powers and since the plaintiffs had fulfilled the role of “private attorney general” in prosecuting violations of federal law. Id. at 241, 95 S.Ct. 1612.
The U.S. Supreme Court reiterated the “American rule” that “the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys’ fee from the loser.” Id. at 247, 95 S.Ct. 1612. The Alyeska Court emphasized that this rule “is deeply rooted in our history and in congressional policy.” Id. at 271, 95 S.Ct. 1612. Nonetheless, the U.S. Supreme Court recognized the continuing vitality of three (3) common law exceptions to the general rule. Id. at 257-59, 95 S.Ct. 1612.
First, the Alyeska Court acknowledged the historic “common fund exception.” Id. at 257-58, 95 S.Ct. 1612; see also Chambers v. NASCO, Inc., 501 U.S. 32, 45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). In equity, a court could “permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys’ fees, from the fund or property itself or directly from the other parties enjoying the benefit.” Alyeska, 421 U.S. at 257, 95 S.Ct. 1612. By doing so, the Court would “distribute] the costs of the burden of the litigation.” Sprague v. Ticonic Nat’l Bank, 307 U.S. 161, 167, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).
Second, a court could grant attorney fees in the event a party exhibited “ “willful disobedience of a court order.’ ” Alyeska, 421 U.S. at 258, 95 S.Ct. 1612 (quoting Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967)). This exception represents the inherent judicial power to hold either a party or counsel in contempt of court. See e.g., In re: Diane Lonetree, SU 96-16 (HCN S.Ct., Apr. 14, 1997) at 2. As a consequence of a court’s inherent discretion, al court could “impose as part of the [contempt] fine attorney’s fees representing the entire cost of the litigation.” Chambers, 501 U.S. at 45, 111 S.Ct. 2123 (citing Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 428, 43 S.Ct. 458, 67 L.Ed. 719 (1923)).
*173 Third, a court could award attorney fees if a pai’ty “ ‘acted in bad faith, vexatiously, wantonly, or for oppressive reasons.’ ” Alyeska, 421 U.S. at 258-59, 95 S.Ct. 1612 (quoting F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974)). The authority to impose attorney fees in this instance derives “from the court’s traditional equitable powers,” Winters v. City of Oklahoma City, 740 P.2d 724, 726 (Okla.1987), but also implicates the “inherent power to police itself.” Chambers, 501 U.S. at 46, 111 S.Ct. 2123. Consequently, a court would not need any basis in substantive law in order to act because “when fees are based upon misconduct by an attorney or party in the litigation itself, ... the matter is procedural.” In re Larry’s Apartment, 249 F.3d 832, 838 (9th Cir.2001).
To a certain extent, the third exception resembles the inherent power of contempt. See Hutto v. Finney, 437 U.S. 678, 691, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). The purposes for awarding attorney fees, vindication of judicial authority and restitution to the injured pai’ty, prove the same. Chambers, 501 U.S. at 46, 111 S.Ct. 2123 (citing id. at 689 n. 14, 111 S.Ct. 2123). However, the bad faith exception is not necessarily triggered by disrespectful courtroom conduct or a failure to adhere to lawful judicial directives. For example, a court may award attorney fees based solely upon an objective assessment of the pleading. See Roadway Express, Inc. v. Riper, 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Yet, “ ‘bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.’ ” Id. (quoting Hall v. Cole, 412 U.S. 1, 15, 93 S.Ct. 1943, 36 L.Ed.2d 702(1973)).
All of the above common law exceptions are rooted in the inherent powers of the judiciary. “The inherent powers of ... courts are those which ‘are necessary to the exercise of all others.’ ” Roadway Express, 447 U.S. at 764, 100 S.Ct. 2455 (quoting United States v. Hudson, 7 Cranch 32, 11 U.S. 32, 34, 3 L.Ed. 259 (1812)). Due to their pedigree, a court must exercise such powers “with restraint and discretion.” Roadway Express, 447 U.S. at 764, 100 S.Ct. 2455. “A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.” Chambers, 501 U.S. at 44-45, 111 S.Ct. 2123. In addition, the dictates of due process mandate fair notice and the opportunity fora hearing prior to assessing attorney fees.[12] Id. at 50, 111 S.Ct. 2123; see also Const., Aht. X, § 1(a)(8); In re Rick McArthur, SU 97-07 (HCN S.Ct., Feb. 27, 1998) at 5-7.
The preceding discussion sets forth the justification for a court granting attorney fees pursuant to its inherent authority, but does not explain how such a grant could pierce the sovereign immunity of a governmental unit. The U.S. Supreme Court confronted this issue a few years after deciding Alyeska. Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). The Hutto Court examined the issue against a backdrop of federal cases, which established the legal premise that a litigant could receive declaratory and in-junctive relief against a state official acting outside of his or her official capacity. See e.g., Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Ex *174 Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
The theory of Young was that an unconstitutional statute is void, and therefore does not “impart to [the official] any immunity from responsibility to the supreme authority of the United States.” Young also held that the Eleventh Amendment[13] does not prevent federal courts from granting prospective injunc-tive relief to prevent a continuing violation of federal law....
Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the sort awarded in Ex Parte Young gives life to the Supremacy Clause.[14] Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law.
Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) (quoting Ex Parte Young, 209 U.S. at 160, 28 S.Ct. 441) (internal citations omitted).
In Hutto, the U.S. Supreme Court approved an award of attorney fees as an ancillary cost to an appropriate grant of prospective injunctive relief. Hutto, 437 U.S. at 690, 98 S.Ct. 2565. Federal courts possess this remedy in order to induce compliance with an injunction, and to compensate the prevailing party for “expenses incurred in litigation seeking only prospective relief.” Id. at 695, 98 S.Ct. 2565. The Hutto Court premised the award on the bad faith exception, and remarked that “[c]osts have traditionally been awarded without regard for the States’ Eleventh Amendment immunity.” Id. The Court continued: “[a] federal court’s interest in orderly, expeditious proceedings ‘justifies [it] in treating the state just as any other litigant and in imposing costs upon it’ when an award is called for.” Id. at 696, 98 S.Ct. 2565 (quoting Fairmont Creamery Co. v. Minnesota, 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1927)).
The U.S. Supreme Court expressed the same sentiment in Alyeska. The Court criticized any proposed expansion of the “American rule” that would “operate only against private parties and not against the Government.” Alyeska, 421 U.S. at 269, 95 S.Ct. 1612. Regardless, the real difficulty is discerning the line between retroactive and prospective relief and associated ancillary fees and costs. See Hutto, 437 U.S. at 690, 98 S.Ct. 2565.
The HCN Supreme Court has affirmed dismissals on the basis of sovereign immunity from suit in the absence of underlying requests for money damages. See e.g., Chloris A. Lowe, Jr. v. Ho-Chunk Nation et al, SU 97-01 (HCN S.Ct., June 13, 1997); see also Const., Art. XII, § 1. The failure to name appropriate parties often proved the dispositive factor.
It is necessary for the courts to know which individuáis are being sued so that the trier of fact may assess whether or not that specific individual has acted outside the scope of them authority or not. Suits based upon the legal argument that someone has acted outside of their authority specifically name the individual(s).
*175 Lowe, SU 97-01 at 4; see also Const., Art. XII, § 2. If a plaintiff identifies either an official or employee acting outside the scope of their authority, then the Court may consider whether to grant “declaratory and non-monetary injunctive relief.” Const., Art. XII, § 2.
The HCN Supreme Court explored the contours of the Judiciary’s equitable powers even further in a subsequent employment case. Millie Decorah, as Fin. Dir. of the HCN, et al. v. Joan Whitewater, SU 98-02 (HCN S.Ct., Oct. 26, 1998). In De-cora, h, the parties entered intoa settlement at the trial level, but stipulated that the presiding judge should determine the plaintiffs appropriate rate of pay. The defendants agreed to reinstate the plaintiff and provide her a damage award of $2,000.00. The Tidal Court, however, gave retroactive, rather than just prospective, effect to the comparable wage determination. Id. at 3.
Ms. Whitewater had named only individual defendants, thereby enabling her to receive only equitable relief from the Court. Consequently, the HCN Supreme Court overturned the Trial Court’s award of retroactive relief, explaining as follows:
[t]he language of the Ho-Chunk Nation Constitution is clear. The Tribal Court may only award equitable relief where officials of the Ho-Chunk Nation act beyond the scope of their duties. Equitable relief is defined as “relief sought in a court with equity powers as, for example, in the case of one seeking an injunction or specific performance instead of money damages.” Black’s Law Dictionary [539 (6th ed,1990).] The definition of equitable relief is defined as nonmon-etary [sic ] relief.
Id. at 4 (emphasis in original); see also Robert A. Mudd v. HCN Legislature et al., SU 03-02 (HCN S.Ct., Apr. 8, 2003) at 6, n. 2. The HCN Supreme Court emphasized that “[b]y awarding the payment as retroactive, the award becfame] a monetary award.” [15] Id.
The HCN Supreme Court first addressed the permissible scope of prospective injunctive relief against the Nation earlier in the year. C. Smith, SU 97-04. Ms. Smith properly exhausted her administrative remedies in an employment action and filed suit against a unit of government and an official. Therefore, Ms. Smith availed herself of the limited waiver of sovereign immunity. Id. at 1.
The HCN Supreme Court emphatically stated that “[wjithout this expressed waiver of immunity such employee suits w[ould] be dismissed.” Id. at 2. The HCN Supreme Court focused on the restrictive language within the waiver, which mandated that “[njothing in this Policies and Procedures shall be construed to grant a party any remedies other than those included in [that] section.” Id. at 4 (quoting HCN LEG. RES. 03-26-96A) (emphasis in original). Therefore, the HCN Supreme Court held that the Trial Court had no authority to order a removal of a written reprimand from Ms. Smith’s personnel tile.[16] C. Smith, SU 97-04 at 4.
*176 More recently, the HCN Supreme Court affirmed the Trial Court’s granting of prospective injunctive relief in the form of a raise in pay and a written apology. H. Smith, SU 03-08. The HCN Supreme Court indicated that “[t]he initial place to see whether sovereign immunity has been violated is the HCN Constitution.” Id. at 10. After citing relevant constitutional provisions, the HCN Supreme Court noted the following:
the principle of sovereign immunity exists primarily to protect the public treasury from lawsuits seeking damages. It does not prevent people from suing the HCN government to enforce their rights under the HCN Constitution.... The appellant contends that the Trial Court violated the limited waiver of sovereign [immunity] by awarding prospective relief in the form of a two cent ($.02) per hour raise....
What the Trial Court ordered is in the nature of prospective forward looking relief, not damages to punish the defendant for its past wrongs. Although such relief has a monetary effect, so do many forms of injunctive relief that the Court has sanctioned in the past such as ordering a new election. However, this Court finds that such forward-looking relief is well within the powers enumerated in the HCN Const., Art. VII, § 6(a). “The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.”
Id. at 10-11 (emphasis in original).[17] The HCN Supreme Court applied the same reasoning in its affirmance of the requirement of a written apology. Id. at 11.
The foregoing synopsis of tribal case law demonstrates that the Judiciary has granted attorney fees and costs pursuant to the HCN R. Civ. P. in conjunction with its inherent and/or constitutional powers. The case review also demonstrates that the Judiciary has granted prospective in-junctive relief possessing an ancillary or incidental monetary impact pursuant to its inherent equitable and/or constitutional powers. Unfortunately, the case law does not reveal any clear guidance for purposes of resolving the issue at hand.
The plaintiffs arguably present a credible request for receipt of attorney fees and costs, provided that the plaintiffs submit an appropriate itemization. The defendants essentially abandoned its dubious legal argument after confronting only a few questions at the appellate hearing. One could deem the defendants’ contentions as crafted in bad faith, but an award of attorney fees and costs could only follow if the Judiciary has adopted the “American rule” with the above-noted exceptions.
Despite signs of just that, the Court remains reluctant to incorporate jurisprudence “deeply rooted in [American] *177 history and English common law into HCN R Civ. P. 53.[18] Alyeska, 421 U.S. at 271, 95 S.Ct. 1612. Only the HCN Supreme Court knows the intent of the relevant rule. The Court cannot opine the breadth or scope of the rule on the basis of standing case law.
Furthermore, the Court cannot readily deduce the HCN Supreme Court’s position on prospective injunctive relief given the seemingly conflicting precedential authority. Compare H. Smith, SU 03-08 at 10-11, with Decorah, SU 98-02 at 4, and C. Smith, SU 97-04 at 4. Does HCN R. Civ. P. 53 envision allowing attorney fees and costs to a party that prevails in approximately eighty percent (80%) of its cases and never against it?[19] This question raises significant equal protection concerns. See Const., Art. X, § 1(a)(8).
In addition, the Court again directs the parties’ attention to the fact that the constitution mentions equitable injunctive relief in two (2) separate provisions, but places the condition, “non-monetary,” only in the latter instance. Const. Arts. VII, § 6(a), XII, § 2. Several questions result from this observation concerning injunc-tive remedies of which the Court shall only identify a few. First, if a plaintiff can receive only non-monetary injunctive relief in a suit against an individual, then what accounts for the decision in C. Smith, reversing the ordered removal of negative references from a personnel file? Second, can a plaintiff receive only injunctive relief possessing a monetary element in an action in which the Nation has waived its sovereign immunity from suit?[20] Third, if so, does the fact that the Court is dealing with a constitutionally permitted election challenge change the dynamic? Finally, is “monetary injunctive relief’ even a legally recognized designation in light of the prospective nature of the remedy?
As a consequence of these and other unresolved questions, the Court feels compelled to deny the plaintiffs’ request for attorney fees and costs. While the plaintiffs likely present a valid claim for bad faith litigation strategy, the HCN Supreme Court has not definitively adopted the American rule and exceptions for use in this jurisdiction. The Court denies the request for costs for similar reasons identified above. The Court notes that this judgment does not constitute a discretionary decision, i.e., this order does not include any subjective determinations committed to it by the appellate body.[21]
The parties retain the right to file a timely post judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judgment or Order. Otherwise, “[a]ny final *178 Judgment or Order of the Trial Court may be appealed to the Ho-Chunk Nation Supreme Court. The Appeal must comply with the Ho-Chunk Nation Rules of Appellate Procedure [hereinafter HCN R.App. P.], specifically [HCN R.App. P.], Rule 7, Right of Appeal.” HCN R. Civ. P. 61. The appellant “shall within thirty (30) calendar days after the day such judgment or order was rendered, file with the [Supreme Court] Clerk of Court, a Notice of Appeal from such judgment or order, together with a filing fee of thirty-five dollars ($35 U.S.).” HCN R.App. P. 7(b)(1). “All subsequent actions of a final Judgment or Trial Court Order must follow the [HCN R.A-pp. P.l” HCN R. Civ. P. 61.

. The Court almost exclusively entertains civil cases, but the "CV” designation is not used for juvenile, domestic violence or child support enforcement matters.

. The remainder of civil cases dealt with CTF/ ITF requests in which the Court routinely holds one (1) non-adversarial fact-finding hearing.

. This figure includes one (1) intragovern-mental dispute in which the Nation constituted the sole party: HCN üep’t of Justice v. HCN Gaming Comm'n, CV 00-58.

. This figure includes one (1) intragovern-mental dispute in which the Nation constituted the sole party: HCN Dep't of Justice v. HCN Gaming Comm’n, CV 00-58. This figure also includes cases brought against employees or officials of the Nation with the Department of Justice providing legal representation. See HCN R. Civ. P. 27(B).

. Four (4) of these cases involved individual contractual disputes proceeding under Hocak tradition and custom, and the remaining two (2) were initiated by the Hocak Federal Credit Union for the purpose of debt collection. See Claims Against Per Capita Ordinance, § 103(d).

. This figure excludes the following cases: Cindy Gilbertson v. HCN Ins. Review Comm’n et al., CV 00-112 (unaware of outcome on remand to HIRC); Lisa S. Wathen v. HCN Gaming Comm’n, CV 00-65 (pending final determination at trial level): and HCN Dep’t of Justice v. HCN Gaming Comm’n, CV 00-58. The interlocutory decision rendered in a temporarily consolidated action enabled the Court, Chief Judge William H. Bossman presiding, to enter a Bnai determination in Wathen. Maureen Arnett et al. v. HCN Dep’t of Admin. et al., CV 00-60, -65 (HCN Tr. Ct., Jan. 8, 2001).

. The Court cannot understand the automatic granting of costs and fees at the appellate level due to the absence of any binding case law on the issue of taxation of costs. See Jacob Lonetree et al. v. Robert Funmaker, Jr. et al., SU 00-16 (HCN S.Ct., Mar. 16, 2001) at 3-4 (only appellate decisions serve as binding precedent). The HCN Supreme Court later denied a request for appellate lay advocate fees and costs in a separate case. Carol J. Smith v. Rainbow Bingo, SU 97-04 (HCN S.Ct., Jan. 8, 1998). The appellee claimed that the appellants filed a frivolous appeal, which the HCN Supreme Court defined as an appeal "presenting no legal argument or question.” Id. at 2. Despite the denial, the HCN Supreme Court nonetheless insinuated that Ms. Smith could have received lay advocate fees against the Nation if it had filed an appeal in bad faith. Id. at 3.

. In dicta, the Court stated that "if the Court were to award lay advocate fees],] it would scrutinize the billings to determine whether they were reasonable and necessary and broken into standard billing units of no less than 14 hours for lay advocates and paralegals or the lowest tenths of hours for attorneys.” Smith, CV 96-94 (HCN Tr. Ct., Sept. 6, 2000) at 4. This practice equates with the manner of reimbursement utilized in juvenile case Guardian ad litem appointments.

. The Court distinguished the award of travel costs in Rockman by describing the award as an effort "to prevent injustice when a defendant was forced to hire an attorney who filed an Answer and appeared in Court before the plaintiff voluntarily dismissed his case.” Smith, CV 96-94 (HCN Tr. Ct., Sept. 6, 2000) at 3. This judge, however, does not believe Ms. Jones was compelled any more than Ms. Smith to acquire legal counsel, so the difference may rest with the opposing party's unwillingness to prosecute the action, thereby causing unjustifiable harm and inconvenience.

. The Court cannot readily discern why the same reasoning would not serve as a prohibition against the other "traditional costs,” especially the filing fees. Even when a plaintiff obtains a judicial waiver of the filing fee, he or she is responsible for reimbursement to the Court upon settlement of or prevailing on the cause of action. HCN R. Civ. P. 4(C). The payment of a filing fee is certainly incidental to bringing suit in the Judiciary.

.The presiding judge must have based the decision on a sovereign immunity consideration since both the Trial Court and HCN Supreme Court recognized the ability of a party to receive attorney fees by authority of HCN R. Civ. P. 53 in Rockman.

. The attorney fees award in Alyeska did not suffer from constitutional infirmities. The U.S. Supreme Court overturned the appellate division since the award did not fit within any of the exceptions. Alyeska, 421 U.S. at 259, 95 S.Ct. 1612.

. "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.” U.S. CONST, amend. XL

. “This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land....” U.S. Const, art. VI, § 2.

. The Court has independently awarded prospective injunctive relief in the form of reinstatement, which could inevitably result in the future payment of wages despite the presence of sovereign immunity. See e.g., Roy J. Rhode v. Ona M. Garvin, as Gen. Manager of Rainbow Casino, CV 00-39 (HCN Tr. Ct„ Aug. 24, 2001).

. The HCN Supreme Court offered no explanation of how the legislative resolution trumped the Judiciary's “power to issue all remedies in law and in equity including in-junctive and declaratory relief.” Const., Art, VII, § 6(a); see also HCN R. Civ. P. 53. The proposed removal of negative references from the file surely represented a form of prospective injunctive relief, and Ms. Smith designat *176 ed an individual defendant in order to enable receipt of such relief. Const., Art. XII, § 2. Perhaps Ms. Smith failed to name an appropriate individual with control over or the ability to direct modifications of the personnel file. However, the Judiciary has never imposed such technical pleading requirements, and the HCN Supreme Court later upheld a grant of similar relief despite the absence of an individually named defendant. Hope B. Smith v. Ho-Chunk Nation, SU 03-08 (HCN S.Ct., Dec. 8, 2003).

. The HCN Supreme Court acknowledged the constitutional limitation of granting “non-monetary [forms of] injunctive relief,” Const., Art. XII, § 2, but concentrated its attention instead on an earlier constitutional provision that does not contain the “non-monetary” limitation. Id. at 10-11. Also, the HCN Supreme Court gave no indication that the more liberal limited waiver of sovereign immunity influenced its decision. Pers. Manual, Ch. 12 at 62.

. The Court cannot simply adopt the Anglo common law tradition. Rather, the Court develops its common law through the gradual incorporation of traditional and customary precepts as enunciated by the Ho-Chunk Nation Traditional Court. See e.g., Ho-Chunk Nation v. Harry Steindorf et al., CV 99-82 (HCN Tr. Ct„ Feb. 11, 2000), aff'd, SU 00-04 (HCN S.Ct., Sept. 29, 2000); see also Const., Art. VII, § 5(a).

. The Ho-Chunk Nation Department of Justice routinely requests attorney fees in the initial pleading or response, but has not, in the recollection of the Court, subsequently filed either a motion reiterating the same or presented an itemization of costs.

. The Ho-Chunk Nation Contempt Ordinance recognizes the Judiciary’s “inherent authority to exercise the power of contempt” in all cases over which the court exercises proper subject matter jurisdiction. Ho-Chunk Nation Contempt Ordinance. §§ 1.01, 3.01. As a result, the Judiciary has authorization to impose monetary sanctions. Id. § 5.01.

. Otherwise, attorney fees and cost assessments are reviewed for an abuse of discretion. Rockman, SU 96-10 at 1; Chambers, 501 U.S. at 55, 111 S.Ct. 2123.