*343 ORDER (Final Judgment)
AMANDA L. ROCKMAN *, Associate Judge.
INTRODUCTION
The Court must determine whether to grant the relief requested by the plaintiff. The plaintiff requests both declaratory and monetary relief against the defendants. The plaintiff claims that the defendants acted outside the scope of their authority in suspending the plaintiff. The following discussion covers the relevant legal issues to properly render a decision.
PROCEDURAL HISTORY
The Court reflects the procedural history of this long-standing matter within the Findings of Fact. For the purposes of this section, the Court notes that the plaintiff filed a letter requesting expedited consideration on March 1, 2005, addressed to former Chief Judge William H. Bossman, stating that the plaintiff had a court case in Jackson County regarding attorney’s fees in this matter.
The presiding judge wishes to extend her sincerest apologies and regrets to the parties for the failure of the Court to enter a timely decision in this matter. Each trial judge maintains a duty to “dispose promptly of the business of the court.” HCN Rules of Judicial Ethics, § 4-1(E); see also In the Matter of Timely Issuance of Decisions, Admin. Rule 04-09-05(1) (HCN S.Ct., Apr. 9, 2005) (requiring issuance of final judgments within ninety (90) days following completion of trial level process). In the interests of justice, the Court informs the parties of the availability of seeking mandamus relief from the Ho-Chunk Nation Supreme Court in order to compel action of a trial level judge. See In re: Casimir T. Ostrowski, SU 05-01 (HCN S.Ct., Feb. 21, 2005) (citing Constitution of the Ho-Chunk Nation, Art. VII, § 6(a)).[1]
APPLICABLE LAW
Constitution. Aitr. XII, § 1, 2
Section 1. I nan unity of Nation from Suit.
The Ho-Chunk Nation shall be immune from suit except to the extent that the Legislature expressly waives its sovereign immunity, and officials and employees of the Ho-Chunk Nation acting within the scope of their duties or authority shall be immune from suit.
Section 2. Suit Against Officials and Employees.
Officials and employees of the Ho-Chunk Nation who act beyond the scope of their duties or authority shall be subject to suit in equity only for declaratory and non-monetary injunctive relief in Tribal Court by persons subject to its jurisdiction for purposes of enforcing *344 rights and duties established by this constitution or other applicable laws.
Section 2. Powers of the Legislature.
The Legislature shall have the power:
(a) to make laws, including codes, ordinances, resolutions, and statutes;
(b) To establish Executive Departments, and to delegate legislative powers to the Executive branch to be administered by such Departments, in accordance with the law; any Department established by the Legislature shall be administered by the Executive; the Legislature reserves the power to review any action taken by virtue of such delegated power;
(c) To constitute a Board of Directors for each Department, except the President shall name the Executive Director, subject to confirmation by the Legislature;
(d) To authorize expenditures by law and appropriate funds to the various Departments in an annual budget;
(e) To raise revenue, including the power to levy and collect taxes and license fees;
(i)To set the salaries, terms and conditions of employment for all governmental personnel;
(g) To set its own procedures, select its officers, and to enact laws governing attendance of its members, including penalties for absences;
(h) To enact all laws prohibiting and regulating conduct, and imposing penalties upon all persons within the jurisdiction of the Nation;
(i) To negotiate and enter into treaties, compacts, contracts, and agreements with other governments, organizations, or individuals;
(j) To authorize and appropriate funds to employ legal counsel in accordance with applicable law;
(k) To acquire or purchase lands for the benefit of the Nation and its members;
(l) To enact laws to manage, lease, permit, or otherwise deal with the Nation’s lands, interests in lands or other. assets;
(m) To enact laws to prevent the sale, disposition, or encumbrance' of Ho-Chunk lands, or other Ho-Chunk assets;
(n) To purchase under condemnation proceedings any lands within the jurisdiction of the Ho-Chunk Nation;
(o) To enact laws to regulate and zone any lands within the jurisdiction of the Ho-Chunk Nation;
(p) To enact laws to create and regulate a system of property including but not limited to use, title, deed, estate, inheritance, transfer, conveyance, and devise;
(q) To issue charters of incorporation, to charter corporations and other organizations for economic or other purposes, and to regulate their activities;
(r) To protect and foster Ho-Chunk religious freedom, culture, language, and traditions;
(s) To promote public health, education, charity, and such other services as may contribute to the social advancement of the members of the Ho-Chunk Nation;
(t) To enact laws governing law enforcement on lands within the jurisdiction of the Nation;
(u) To enact laws to regulate domestic relations of persons within the jurisdiction of the Nation;
*345 (v) To establish and maintain headquarters for the Ho-Chunk Nation;
(w) To enact laws to regulate hunting, fishing, trapping, recreation and all other related activities on lands within the Nation’s jurisdiction;
(x) To enact any other laws, ordinances, resolutions, and statutes necessary to exercise its legislative powers delegated by the General Council pursuant to Article III including but not limited to the forgoing list of powers.
Art. IX, § 3
Section 3. Legislative Removal of Legislators.
The Legislature may remove a member of the Legislature for good cause. Any member of the Legislature subject to removal shall be informed of the charges, be given adequate notice of the impending removal action, and given an opportunity to prepare and present a defense including presenting witnesses and other evidence. An affirmative vote of three-fourths (¾) of the entire Legislature shall be required for all Legislative removal actions under this Section. The Legislator subject to removal shall not vote.
Art. X, § 1(a)(8)
Section 1. Bill of Rights.
8. The Ho-Chunk Nation, in exercising its powers of self-government, shall not: deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without the due process of law
Code of Ethics Act, Adopted 01/27/99
Section 3: Standards of Conduct
§ 3.09: Elected and appointed officials and unclassified employees of the Nation shall not threaten or intimidate any employee of the Nation in reprisal for the employee acting within the scope of the employee’s official duties and authority.
Ho-Chunk Nation Personnel Policies and Procedures Manual (Mar. 31, 1999)
Ch. 12—Employment Conduct, Discipline, and Administrative Review
Administrative Review Process for Non-gaming [p. 50]
The burden of proof is on the grievant to show that what he/she is claiming, actually happened. All levels of reprimands shall be forwarded to the Personnel Department promptly. Grievances shall be forwarded to the Personnel Department promptly by the grievant. This proof may include documentation and witnesses.
1. Grieve in writing to the Supervisor and the Personnel Department within five (5) working days of the action. The Supervisor has an affirmative duty to try and resolve the problem. The Supervisor has five (5) days to respond to the grievance. She/He must meet with the person and document the decision.
Limited Waiver of Sovereign Immunity [p. 50b]
The HoChunk [sic ] Nation hereby expressly provides a limited waiver of sovereign immunity to the extent that the Court may award monetary damages for actual lost wages and benefits established by the employee in an amount not to exceed $10,000, subject to applicable taxation. Any monetary award granted under this Chapter shall be paid out of the departmental budget from which the employee grieved. In no event shall the Trial Court grant any monetary award compensating an employee for actual damages other than with respect to lost wages and benefits. The Trial Court *346 specifically shall not grant any monetary award against the Nation or its officials, officers, and employees acting within the scope of their authority on the basis of injury to reputation, defamation, or other similar invasion of privacy claim; nor shall the Trial Court grant any punitive or exemplary damages.
The Trial Court may grant .equitable relief mandating that the HoChunk [sic ] Nation prospectively follow its own laws, and as necessary to remedy any past violations of tribal law. Other equitable remedies shall include, but not be limited to: an order of the Court to the Personnel Department to reassign or reinstate the employee, a removal of negative references from the personnel file, an award of bridged sel-viee credit, and a restoration of seniority. Notwithstanding the remedial powers noted in the Resolution, the Court shall not grant any remedies that are inconsistent with the laws of the HoChunk [sic ] Nation. Nothing in this Limited Waiver or within the Personnel Policies and Procedures Manual shall be construed to grant a party any legal remedies other than those included in the section. (resolution 06/09/98A)
Ho-Chunk Nation Rules of Civil Procedure (Old Version)
Rule 37. Protective Orders.
For good cause, the Court on its own motion or at the request of any party or witness, may make an Order to protect a party or other person for undue annoyance, embarrassment, oppression or undue burden or expense.
IK) -CHUNK NATION RULES OF CIVIL PROCEDURE (Eel). 11, 200(1 revision)
Rule 53, Relief Available.
Except in a Default Judgment, the Court is not limited to the relief requested in the pleading and may give any relief it deems appropriate. The Court may only order such relief to the extent allowed by Ho-Chunk Nation enactments. The: Court may order any party to pay costs, including attorney’s fees, filing fees, costs of service and discovery, jury and witness costs. Findings of fact and conclusions of law shall be made by the Court in support of all final judgments.
Rule 58. Amendment to or Relief from Judgment or Order.
(A) Relief from Judgment. A Motion to Amend or for relief from judgment, including a request for a new trial shall be made within ten (10) calendar days of the filing of judgment. The Motion must be based on an error or irregularity that prevented a party from receiving a fair trial or a substantial legal error that affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgment, the Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgment accordingly. The motion may be made with a motion for a new trial. If the Court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the Court denies a motion filed under this Rule, the time for initiating appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the filing of such motion, and the Court does not decide a motion under this Rule or the judge does not *347 sign an order denying the motion, the motion is considered denied. The time for initiating the appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(C) Motion to Modify. After the time period in which to file a Motion to Amend, of a Motion for Reconsideration has elapsed, a party may file a Motion to Modify with the Court. The Motion must be based upon new information that has come to the party’s attention that, if true, could have the effect of altering or modifying the judgment. Upon such motion, the Court may modify the judgment accordingly. If the Court modifies the judgment, the time for initiating an appeal commences upon entry of the modified judgment. If the Court denies a motion filed under this Rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) calendar days after the filing of such motion, and the Court does not decide the motion or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(I)) Erratum Order or Re-issuance of Judgment. Clerical errors in a Court record, including the Judgment or Order, may be corrected by the Court at any time.
(E) Grounds for Relief. The Court may grant relief from judgments or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not reasonably have been discovered in time to request a new trial; (2) fraud, misrepresentation or serious misconduct of another party to the action; (3) good cause if the requesting party was not personally seiwed in accordance with Rule o(e)(l)(a)(i) or (ii), did not have proper service and did not appear in the action; or (4) the judgment has been satisfied, released, discharged or is without effect due to a judgment earlier in time.
Rule 61. Appeals.
Any final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of a final Judgment or Trial Court Order must follow the Rules of Appellate Procedure.
FINDINGS OF FACT
1. On September 13, 1995 President Chloris A. Lowe, Jr. signed Presidential Executive Order, 09-13-95(1). This order released the tribal newsletter from governmental censorship and reinforced the newsletter’s role in disseminating the truth. See Dels.’ Ex. C.
2. On March 4, 1999, the plaintiff, Stewart A. Miller, went to the office of Berna Bigthunder, Editor of the Hocf Wo-rak newsletter. The plaintiff demanded that an allegedly libelous letter concerning real estate dealings not be published in the newsletter. The plaintiff demanded a copy of the letter and threatened to call his attorney if Ms. Bigthunder published the letter. See Deis.’ Ex. B. The plaintiff allegedly made threatening or defamatory comments to Ms. Bigthunder. Trial Tr. at 71. Ms. Bigthunder alleged a violation of the Code of Ethics Act, § 3.
3. On March 15, 1999, the plaintiff received the legislative agenda for the March 16 meeting. The agenda noted that the *348 Ho-Chunk Nation Legislature (hereinafter Legislature) would be investigating the “Bigthunder Incident.”
4. At the Legislative Meeting, Legislator Dallas R. White Wing made a motion to suspend the plaintiff without pay effective immediately until an investigation was completed concerning allegations of violations of various laws, and indicated that the investigation was to be completed by March 30, 1999. The motion carried 10-0-0. See Def.’s Ex. E.
5. On March 16, 1999, the Legislature effected the suspension without pay of the plaintiff from his elected seat as District V Legislator. The Legislature based its suspension decision on the aforementioned incident. Def.’s Ex. F.
6. The investigation of the Bigthunder Incident was to be completed on or before March 30,1999. Id,
7. On March 25, 1999, the plaintiff filed a Complaint against the Legislature and named individual legislators.
8. The same day, the plaintiff filed a Motion for Temporary Restraining Order, asking the Court to prohibit the defendants from keeping him from performing his duties as Legislator. The plaintiff also filed a Motion for Expedited Consideration of the Restraining Order Mot. for Temp. Restraining Order (Mar. 25, 1999).
9. On March 30, 1999, the investigation into the Bigthunder Incident was completed. The Legislature decided to proceed with the removal actions of the plaintiff. The plaintiff remained on suspension until his Removal Hearing on April 16, 1999.
10. On April 1, 1999, the plaintiff filed his Level 1 grievance with Vice President Clarence P. Pettibone. There exists no evidence in the record he received any response. See Defs.’ Ex. L.
11. On April 8, 1999, the plaintiff filed his Level 2 grievance with the Legislature. There exists no evidence in the record he received any response. See Def.’s Ex. L.
12. On April 12, 1999, the defendants filed their Answer to the Complaint, and also filed a Motion to Dismiss, asserting the bar of sovereign immunity. Answer & Mot. to Dismiss (April 12,1999).
13. On or around April 13, 1999, the case was reassigned from Chief Judge Mark D. Butterfield to Pro Tempore Associate Judge Rebecca Weise.
14. On the same date, a letter was sent to the plaintiff requesting that he appear before the Legislature on April 16, 1999. The letter also gave the plaintiff notice of his right to present witnesses,, evidence and/or a defense to the enumerated charges at the Removal Hearing. The letter additionally apprised the plaintiff of the charges levied against him. See Defs.’ Ex. 12.
15. The Legislature conducted the plaintiffs Removal Hearing on April 16, 1999. The plaintiff was not removed, and served the balance of his term following his reinstatement.
16. The plaintiff received back pay for the suspension period from April 1-16 following his reinstatement, but failed to receive compensation for the period from March 16-30. Trial Tr. at 56-57.
17. The plaintiff failed to retain his seat in the Legislature following the 1999 General Election.
18. On April 28, 1999, the defendants filed a Motion to Dismiss, asserting a failure to state a claim upon which relief may be granted. Def.’s Notice & Mot. to Dismiss for Failure to State a, Claim Upon Which Relief Can Be Granted (Apr. 28,1999).
*349 19. The following day, the defendants filed a Motion for Recusal, asking for the removal of former Chief Judge Mark D. Butterfield from the case. Def.’s Mot. for Recusal. (Apr. 29,1999).
20. May 6, 1999, the parties stipulated to the removal of former Legislator Jacob LoneTree as a defendant in the present action. Stipulation & Order for Dismissal (May 6, 1999).
21. On May 18, 1999, the plaintiff filed an Amended Complaint with the Trial Court, seeking a declaratory judgment, fees, and costs. Am. Compl. (May 18, 1999).
22. On June 7, 1999, the defendants filed an Answer to the plaintiffs Amended Complaint. Def.’s Answer to Am. Compl, (June 7,1999).
2d. On July 27, 1999, the defendants filed a Motion to Consolidate the plaintiffs actions against Clarence P. Pettibone and against the legislative representatives. Def.’s Notice & Mot. for Consolidation, CV99-22, -37 (July 27, 1999). The case was so consolidated.
24. On July 30, 1999, the defendants filed a Motion to Stake Pleadings from the plaintiffs Amended Complaint. Def. ’s Notice & Mot. to Strike Pleadings, CV 99-22, -37 (July 30,1999).
25. On the same date, the defendants filed a Notice and Motion to Dismiss and a P> rief in Support of Motion to Dismiss, asserting the bar of sovereign immunity. Def.’s Notice & Mot. to Dismiss, CV99-22 (July 30, 1999).
20. On August 6, 1999, the plaintiff filed a second Amended Complaint seeking declaratory and monetary relief, and asking for the removal of all negative inferences from his personnel file.
27.On August 30, 1999, the Court entered a thirty (30) day stay of Trial, pending the outcome of the defendants’ request to the Supreme Court to consider an appeal. Order, (Aug. 30,1999).
28. September 15, 1999, the Supreme Court denied the defendants’ interlocutory appeal. Order Denying Appeal SU99-08 (Sept. 15, 1999).
29. On September 20, 1999, the defendants filed a Motion for Protective Order, requesting all information contained within executive session be kept under seal. See Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.), Rule 37. Additionally, the defendants sought to close the courtroom during any proceedings referring to the information relayed during such executive sessions.
30. On September 29, 1999, the defendants filed a Motion in Limine with the Court, moving to waive Executive Session confidentiality. Notice of Mot. & Mot. in Limine, (Sept. 29,1999).
31. On October 27, 1999, the Court granted the Protective Order and Motion in Limine. Order (Granting Protective Order & Mot. in Limine) (Oct. 27, 1999).
32. On January 28, 2003, the case was reassigned from Pro Tempore Associate Judge Rebecca Weise to former Chief Judge William H. Bossman. Order Reassigning Case, (Jan. 28, 2003).
33. On February 3, 2003, the Court entered an order allowing the parties time to request a new Pro tempore judge and a new trial, following the failure of the Pro tern judge to take any. action on the case. Order (Allowing Parties Time to Request New Pro tern Judge & Neiv Trial), (Feb. 3, 2003). However, the plaintiff consented to have Chief Judge Bossman resolve the matter.
34. Following Chief Judge Bossman’s departure, the Court reassigned the case to Pro Tempore Associate Judge Tina F. *350 Gouty-Yellow on July 12, 2005. Reassignment Order, (July 12, 2005).
35. Following Associate Judge Gouty-Yellow’s departure, the Court reassigned the case to Associate Judge Amanda L. Rockman. Reassignment Order, (Aug. 28, 2006).
DECISION
The plaintiff claimed the actions of the Legislature were arbitrary and capricious, beyond the scope of power of the Legislature, and violated his right to due process of law. The plaintiff sought declaratory and monetary relief. The defendants asserted that the plaintiff failed to grieve his suspension through the proper channels, or, alternatively, the Nation and its officials were immune from suit under the doctrine of sovereign immunity.
I. Did the Legislature waive the Ho-Chunk Nation’s sovereign immunity?
The Supreme Court of the United States has ruled in actions against Indian tribes, a waiver of sovereign immunity must be clear and unequivocal. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); see also Puyallup Tribe v. Wash. Dep’t of Game, 433 U.S. 165, 172-73, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977); United Stales v. U.S, Fidelity & Guaranty Co., 309 U.S. 506, 512-13, 60 S.Ct. 653, 84 L.Ed. 894 (1940); Turner v. United Stales, 248 U.S. 354, 358, 39 S.Ct. 109, 63 L.Ed. 291 (1919). This Court has heard and decided a long line of cases challenging actions by the Legislature. See Constitution of the Ho-Chunk Nation (hereinafter Constitution), ART. XII, § 1; see. also Chloris A. Lowe, Jr. v. HCN Legislature et al., CV 97-12 (HCN Tr. Ct., Mar. 21, 1997) at 14, aff'd, SU 97-01 (HCN S.Ct., June 12, 1997). The plaintiff named as party defendants, the Ho-Chunk Nation, the Ho-Chunk Nation Legislature, as well as individual legislators. Am. Cumpl., CV 99-22 (Aug. 6, 1999). The Constitution states, “[t]he Ho-Chunk Nation shall be immune from suit except to the extent that the Legislature expressly waives its sovereign immunity, and officials and employees of the Ho-Chunk Nation acting within the scope of their duties or authority shall be immune from suit.” Const., Art. XII, § 1. The plaintiffs successive pleadings do not contain a reference to a mandated express waiver of sovereign immunity from the Legislature. See, e.g., Decorah v. Rainbow Casino, CV 95-18 (HCN Tr. Ct., Mar. 18, 1996). The defendants have the right to assert the defense of sovereign immunity from suit absent an express legislative waiver.[2] Const., Art. XII, § 1; see also Lowe, Jr., CV 97-12 at 14.
Rather, the plaintiff relies on “the exception to the sovereign immunity bar” that individual legislators acted beyond the scope of their authority. Lowe, Jr., CV 97-12 at 15; Const., Akt. XII, § 2. In this instance, a suit in equity for “declaratory and non-monetary injunctive relief in Tribal Court” allows the plaintiff to have the Court institute corrective actions against the named defendants. Id. The plaintiff must show affirmatively that the legislators who took the action against him acted outside the scope of their authority. Const., Aet. XII, § 2.
*351 However, the Constitution, to reiterate, renders this a difficult proposition. The .Constitution states that the Legislature shall have the power to set “its own procedures, select its officers, and to enact laws governing its attendance of its members, including penalties for absences.” Const., Art. V, § 2(g). Therefore, the Legislature has the power to set its own procedures governing its members’ attendance. Within the Constitution, the Legislature has twenty-four (24) constitutionally enumerated powers. Const,, Art. V, § 2. Thus the faith of Ho-Chunk Nation citizens and members in the Legislature is dependent on, among other policy concerns, the Legislature’s integrity and its individual legislators acting as committed public servants within such political body. In this instance, the individual legislators acted as a political body, and they suspended the plaintiff pending the outcome of an investigation.[3] See Def.’s Ex. E. The Executive Session Meeting Minutes indicated that Legislator Dallas R. White Wing made a motion to suspend the plaintiff without pay effective immediately until an investigation was completed concerning allegations of violations of various laws, and indicated that the investigation was to be completed by March 30, 1999. Id. The motion carried 10-0-0. Id,.
The plaintiff has seemingly failed to substantiate his burden of proof that the named officials of the Legislature acted outside the scope of their authority when the Legislature suspended him pending investigation of the Bigthunder Incident. The Legislature reacted to Ms. Bigthun-der’s complaint against the plaintiff, and suspended him during the pendency of the investigation into the alleged incident. The plaintiff was afforded a removal hearing to face the charges levied against him on April 16, 1999. Const., Art. V, § 3.
Upon the conclusion of the investigation, the plaintiff was reinstated to his position on the Legislature. There exists no evidence on the record that the individual members of the Legislature acted outside the scope of the authority granted to them by the Constitution as it relates to internal legislative procedures. Therefore, the plaintiff may not receive any equitable relief on this ground. However, this conclusion does not end the inquiry. The Legislature, as an entity of the Ho-Chunk Nation, still has the duty to abide by the constitutional mandates of due process as articulated within Constitution, Article X, § 1(a)(8).
II. Was the plaintiff afforded minimal, procedural due process protections as guaranteed by the Constitution, Article X, § 1(a)(8) in relation to the plaintiffs March 16,1999 suspension?
The Ho-Chunk Nation Supreme Court (hereinafter Supreme Court) recognized that the Ho-Chunk Nation cannot detrimentally affect the property right of employment without providing sufficient notice to the employee. Louella A. Kelty v. Jonette Pettibone et al., SU 99-02 (HCN S.Ct., July 27, 1999) at 3; see also Debra Knudson v. HCN’ Treas. Dep’t, SU 98-01 (HCN S.Ct., Dec. 1, 1998) at 3-4. “Notice must at a minimum give an employee a sufficient understanding of the underlying facts so that the employee may consider whether or not to file a grievance with sufficient knowledge.” Kelty, SU 99-02 at 4. The Supreme Court indicated that an insufficient notice is tantamount to no no *352 tice, and therefore violative of procedural due process. Id.
The defendants in the instant case did not afford the plaintiff his minimal procedural due process protections. The plaintiff received the legislative agenda on the afternoon of Monday, March 15, 200(5. The agenda stated that the Legislature would be reviewing the “Berna BigThun-der incident report.” Tr. at 46, ¶ IB. The plaintiff was neither informed a hearing would take place on the matter, nor any disciplinary action would be taken against him.
A. Is the plaintiff entitled to equitable or legal relief and/or attorneys fees and costs in relation to the his March 16, 1999 suspension?
In 2003, the Supreme Court upheld the removal of negative references from an employee’s personnel file. Hope B. Smith v. Ho-Chunk Nation, SU 03-08 (HCN S.Ct., Dec. 8, 2003) at 10. The Court noted “such forward-looking relief is well within the powers enumerated in the CONSTITUTION ART. VII, § 6(a). ‘The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.’ ” Id. This Court has regularly permitted such relief. See generally, Joan Whitewater v. Millie Decorah et al., CV 96-88 (Jan. 20, 1998). Under the auspices of due process, the Court grants the relief sought by the plaintiff, and directs the Ho-Chunk Nation Department of Personnel to remove all negative references connected to the basis of these proceedings from the plaintiffs file.
The plaintiff has requested that the Court grant him back pay for the duration of Ms suspension pending the investigation of the Bigthunder Incident. The Court has the right to award back pay against the Nation to successful petitioners, provided again that the Legislature has expressly waived the Nation’s sovereign immunity form suit. See Smith, SU03-08 at 10. The Supreme Court in Smith noted the doctrine of sovereign immunity existed to protect the Ho-Chunk Nation Government from continuous suits for damages, not to deprive claimants from equitable remedies. Id.; see also Const., Art. XI1, § 1-2. The Court has awarded appropriate relief above, but the finding of a due process violation does not, and cannot, serve as a substitute for a legislative waiver.
The plaintiff has asked the Court to grant him attorney’s fees relating to this case. The firm of Skolos & Millis, S.C. has filed for a total of $3,048.95 in costs and fees relating to this action; $2,964.95 in attorney billing and filing fees of $84.00. The Court may grant attorneys fees and costs as deemed appropriate. HCN R. Civ. P. 53. The Court previously confronted the question of an award of fees against the Nation for unreasonable or unconstitutional actions. Chloris Lowe, Jr. v. Ho-Chunk Nation Legislature Members, et al., CV 00-104, 2004 WL 5588795, 5 Am. Tribal Law 160 (HCN Tr. Ct., Mar. 22. 2004). In Lowe, the Court ruled except in limited cases, the American Rule should apply to all attorney fees cases until the Supreme Court or Legislature definitively indicate otherwise, and declined to grant fees. Under the American Rule, parties generally bear the burden of costs and fees associated with bringing legal action. As a result, the Court declines to award attorneys fees in this matter. Likewise, the Court declines to grant litigation costs, ie., mailing and filing fees, as a matter of basic fairness. See Kristen K. White Eagle v. Ho-Chunk Casino et al., CV 04-97 (HCN Tr. Ct., Oct. 4, 2005). The Court distinguishes its recent decision to award attorneys fees by noting the parties in the present case have not specifically stipu *353 lated to the award of tees or costs, Ho-Chunk Nation Legislature v. George Lewis, CV 04-73, 2006 WL 5882894, 6 Am. Tribal Law 301 (HCN Tr. Ct., Nov. 06, 2006).
IN SUMMATION, the Court cannot award the plaintiff any monetary relief despite a denial of due process since a) no waiver of sovereign immunity exists or b) the plaintiff failed to adhere to the terms of the limited waiver of sovereign immunity within the former Personnel Manual. Tin* Court, however, possesses the authority to grant equitable relief for the violation of due process. The Court accordingly enjoins the named individual defendants to remove the negative inferences from the plaintiff’s personnel file.
The parties retain the right to file a timely post judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judgment or Order. Otherwise, “[a]ny final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Rules of Appellate Procedure [hereinafter HCN R.App. P.j, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal.” HCN R. Civ. P. 61. The appellant “shall within sixty (60) calendar days after the day such judgment or order was rendered, with the Supreme Court Clerk, a Notice of Appeal from such judgment or order, together with a filing fee as stated in the appendix or schedule of fees” HCN R.App. P. 7(b)(1). “All subsequent actions of a final Judgment or Trial Court Order must follow the [HCN R.App. P.J.” HCN R. Civ. P. 61.

 The Court appreciates the assistance of Staff Attorney Jennifer L. Tilden in the preparation of this opinion.

. This case was originally assigned to former Chief Judge Mark D. Butterfield. On or about April 13, 1999, the Legislature appointed Attorney Rebecca Weise as a judge pro tempore, who subsequently presided over the August 19, 1999 Trial. On January 21, 2002, former Chief Judge Butterfield requested a new pro tempore judge due to the lack of activity. On January 28, 2003, the case was reassigned to former Chief Judge William H. Bossman. Chief Judge Bossman did not take any action on the case during his tenure, and it was reassigned to pro tempore Associate Judge Tina F. Gouty-Yellow who also did not take any action on the case during her limited tenure, which expired on December 31, 2005.

. The plaintiff may have attempted to utilize the former Administrative Review Process. This possibility remains unclear because the plaintiff submitted his April 1, 1999 level 1 "grievance as the result of his suspension that commenced March 16, 1999.” Def. Ex, L at 2. Regardless, the plaintiff certainly filed a late grievance, thereby eliminating recourse to the limited waiver of sovereign immunity.
See Personnel Manual, Ch. 12 at 50b.

. The plaintiff also argued that the defendants did not follow the Code of Ethics Act. However, this argument is Hawed since the Code of Ernies Act does not contain a waiver of sovereign immunity.